KORMAN, District Judge,
dissenting:
This appeal from the denial of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, however decided, will have no practical consequence. While the ma *1051 jority orders the district court to issue the writ, it will not result in the release of petitioner, a serial drug dealer, who is serving a life sentence for distribution of methamphetamines. The life sentence was mandatory because of two prior drug convictions in California. The judgment of conviction for the offense on which he is serving the foregoing life sentence and the judgments of conviction for the predicate offenses are final and concededly not subject to challenge.
Nevertheless, the majority orders the district court to grant the petition with respect to three counts of importing methamphetamines into the United States from Guam — a ground for relief that was considered and rejected in two prior petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner did not timely file an appeal from the denial of his first petition, and the appeal was dismissed. Alaimalo v. Shultz, No. 06-15658 (9th Cir. June 9, 2006). The denial of his second petition was unanimously affirmed in an unpublished memorandum that expressly “note[d] that ... even if Alaimalo were successful in his actual innocence claim, his life sentence would not be affected.” Alaimalo v. United States, 317 Fed.Appx. 619, 620 (9th Cir.2008). In sum, while we may all agree that “the principle! ] of ... finality ‘must yield to the imperative of correcting a fundamentally unjust incarceration,’ ” Majority Op. at 1050 (quoting Engle v. Isaac, 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)), the writ the majority orders the district court to issue on his fourth § 2241 petition is a meaningless piece of paper that will provide Alaimalo with no relief.
A holding having no practical effect would not normally invite a dissenting opinion. Nevertheless, the holding of the majority that a habeas corpus petitioner may commence an unending number of successive petitions pursuant to 28 U.S.C. § 2241 until he succeeds, even where success amounts to nothing, makes bad law in an easy case. Such a precedent should not go unchallenged.
BACKGROUND
In United States v. Cabaccang, 332 F.3d 622 (9th Cir.2003) (en banc), by a six to five vote, over a compelling dissenting opinion of Judge Kozinski, this court overruled two previous panel decisions, Guam v. Sugiyama, 846 F.2d 570 (9th Cir.1988), and United States v. Perez, 776 F.2d 797 (9th Cir.1985), and held that transporting controlled substances over international waters by plane from Guam to the continental United States did not constitute the importation of a controlled substance. Petitioner here, Vaatausili Alaimalo, had raised this issue on his direct appeal from the judgment of conviction. The conviction was affirmed, without discussion of the issue, presumably because of the then-binding Ninth Circuit precedent. United States v. Alaimalo, No. 97-10454, 1998 WL 852911 (9th Cir. Dec. 2,1998). Alaimalo then filed a motion pursuant to 28 U.S.C. § 2255, challenging his conviction on a number of grounds, although not on the ground that his conviction for three counts of conspiracy to import methamphetamine into the United States was invalid.
I pause here to provide the overlapping chronology of that challenge and the Cabaccang appeal, because it provides necessary background relevant to a discussion of one of the principal issues on this appeal. Alaimalo filed his § 2255 motion on December 2, 1999, eighteen days before the first of the three Cabaccang defendants filed his brief on appeal raising the issue on which they would ultimately prevail. The petition was denied on February 15, 2000. Alaimalo v. United States, No. *1052 99-cv-106 (D.Guam Feb. 15, 2000). On July 5, 2001, while AJaimalo’s appeal was pending, we affirmed the conviction in Cabaccang on all issues except one sentencing issue not relevant here. United States v. Cabaccang, 16 Fed.Appx. 566 (9th Cir.2001).
Subsequently, apparently sua sponte, we ordered the parties to address the issue whether the case should be heard en banc with respect to whether transporting drugs from California to Guam constituted importation within the meaning of 21 U.S.C. § 952. This order was entered on August 2, 2002, shortly after we had filed a supplemental memorandum addressing the one issue left unresolved in the earlier order affirming the conviction. United States v. Cabaccang, 36 Fed.Appx. 234 (9th Cir.2002). Then, on November 6, 2002, two days after Alaimalo’s appeal was argued, an order was entered directing that the Cabaccang case be reheard en banc. United States v. Cabaccang, 309 F.3d 1209 (9th Cir.2002) (order granting en banc rehearing). We affirmed the denial of Alaimalo’s petition on December 20, 2002, United States v. Alaimalo, 313 F.3d 1188 (9th Cir.2002), eleven days before the en banc hearing in Cabaccang. Coincidentally, Alaimalo was represented on his appeal by Sarah Courageous, the attorney who represented Roy Cabaccang, one of the defendants in that case. Nevertheless, she did not file any motion on Alaimalo’s behalf seeking to stay the proceedings in his appeal pending the outcome of the en banc hearing in Cabaccang.
Alaimalo filed his first petition for habeas corpus pursuant to 28 U.S.C. § 2241 in March 2005. The district court denied the petition on the ground that Alaimalo could have raised the Cabaccang issue in his previous § 2255 petition. Alaimalo v. Shultz, No. 05-cv-300 (E.D.Cal. Sept. 29, 2005). Consequently, he could not take advantage of § 2255(e), which compels a federal prisoner to file a collateral attack on his conviction pursuant to § 2255, unless the remedy there provided was “inadequate or ineffective to test the legality of his detention.” The latter clause is known as the so-called “escape hatch,” which permits a prisoner to file an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Alaimalo’s appeal of the denial of his first petition was dismissed on the ground that it was not timely filed. Alaimalo v. Shultz, No. 06-15658 (9th Cir. June 9, 2006). Undeterred, on October 27, 2006, Alaimalo filed a second petition for a writ of habeas corpus pursuant to § 2241 raising the same ground as his first petition. This second petition was likewise denied on the same ground as the first. Alaimalo v. United States, No. 06-cv-6872 (C.D.Cal. Sept. 25, 2007). This time, Alaimalo filed a timely appeal. A panel composed of Judges Tashima, Silverman and N.R. Smith unanimously affirmed in an unpublished memorandum. Alaimalo v. United States, 317 Fed.Appx. 619 (9th Cir.2008). Specifically addressing Alaimalo’s argument on appeal, the panel held:
Alaimalo contends that the district court erred in failing to address on the merits his claim that under United States v. Cabaccang, 332 F.3d 622 (9th Cir.2003) (en banc), he is actually innocent of importation because the methamphetamine involved in the offenses had traveled inside United States territory between California and Guam. The district court correctly concluded that 28 U.S.C. § 2255 was not an inadequate or ineffective remedy so as to allow Alaimalo to proceed under § 2241. See Harrison v. Ollison, 519 F.3d 952, 959 (9th Cir.2008) (stating that § 2255 escape hatch criteria met when petitioner claims actual innocence and he has not had unobstructed procedural shot at presenting that claim). We note that, *1053 as stated in the answering brief, even if Alaimalo were successful in his actual innocence claim, his life sentence would not be affected.
Id. at 620.
While that appeal was pending, Alaimalo filed a third petition pursuant to § 2241 on September 27, 2007. This petition made no mention of the Cabaccang argument. The petition was dismissed for lack of jurisdiction, Alaimalo v. Norwood, No. 07-cv-6313 (C.D.Cal. May 9, 2008), and we denied a motion for a certificate of appeal-ability, Alaimalo v. Norwood, No. 08-56128 (9th Cir. Apr. 1, 2009). Finally, before his appeal from his second § 2241 petition was decided and before his third petition was denied by the district court, Alaimalo filed his fourth petition pursuant to § 2241, again raising the Cabaccang issue, and which is the subject of this appeal.
DISCUSSION
The foregoing chronology spares the reader any discussion of the numerous motions pursuant to § 2255 and Rule 60(b) that Alaimalo filed while he was bombarding various district court judges with his § 2241 petitions. Nevertheless, it provides a sufficient backdrop for the threshold issues presented in this case, namely, whether Alaimalo could raise the Cabaccang issue in a petition for a writ of habeas corpus pursuant to § 2241 and whether he could continue to file successive petitions after his initial petition was denied — a ruling from which he failed to take a timely appeal.
I. The Jurisdiction of the District Court
I address first the issue of the jurisdiction of the district court to consider Alaimalo’s third successive petition without a certificate issued by the Court of Appeals authorizing him to do so. While the issue is “not free from doubt,” Wofford v. Scott, 177 F.3d 1236, 1241 (11th Cir.1999), I accept for present purposes the majority’s holding that Alaimalo was entitled to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without obtaining such a certificate. This he has already done. The issue here turns on the jurisdiction of the district court to entertain his fourth petition raising the same issue as two of his previous petitions, without a certificate authorizing its filing. Section 2244 provides that:
No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.
28 U.S.C. § 2244(a) (emphasis added).
On its face and subject to the “except clause,” § 2244(a) would appear to grant a district judge discretion to decline a successive application for a writ of habeas corpus, although it does not compel him to do so. Indeed, the Supreme Court so held in Sanders v. United States 373 U.S. 1, 12, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), although it did so in the context of an earlier version of § 2244(a), amended by the Anti-terrorism and Effective Death Penalty Act of 1996 (“AEDPA”), which did not contain the “except as provided in section 2255” clause. Instead, the discretion of the district court to decline to entertain a second or successive petition raising the same claim was conditioned on a finding that “the ends of justice” would not be served by a consideration of the merits of the *1054 petition. 28 U.S.C. § 2244(a) (1994) (amended 1996).
The specific provision of AEDPA that deleted the “ends of justice” clause in § 2244(a), expressly stated that it was making a “conforming amendment” to § 2244(a) to add a cross-reference to § 2255. See AEDPA, 104 P.L. 132, § 106(a), 110 Stat. 1214, 1220 (1996). Significantly, AEDPA amended § 2255 to delete a provision, comparable to the opening clause of § 2244(a), which gave the sentencing court discretion to decline to “entertain a second or successive petition for similar relief on behalf of the same prisoner,” and it added the requirement of a certificate of authorization for second or subsequent petitions, contained in 28 U.S.C. § 2255(h). See AEDPA, 104 P.L. 132, § 105, 110 Stat. 1214, 1220 (1996).
These changes suggest that Congress intended to compel a district judge to entertain a second or successive application pursuant to § 2241 that challenges a judgment of conviction only when the petitioner had obtained a certificate of authorization of the kind that § 2255(h) requires as a condition to the filing of a second or successive petition pursuant to that section. Moreover, the fact that § 2255(h) applies by its terms to successive motions brought pursuant to § 2255 is not determinative because Congress incorporated the certificate of authorization requirement by reference in the “except as provided” clause of § 2244(a).
A contrary holding, which would allow the filing of a second or successive challenge to a judgment of conviction pursuant to § 2241, without a certificate of authorization, would lead to an extraordinarily anomalous, if not absurd, result. This is so because the normal, if not exclusive, procedure for a federal prisoner to challenge the validity of a judgment of conviction is by a motion pursuant to § 2255. A second or successive § 2255 petition may not be considered by the district court unless petitioner obtains a certificate authorizing the district court to do so. 28 U.S.C. § 2255(h). The scope of the § 2241 remedy, as it relates to challenges to the validity of a judgment of conviction, is the same as the scope of the § 2255 remedy. Compare 28 U.S.C. § 2241(c)(3) with 28 U.S.C. § 2255(b); and see Kinder v. Purdy, 222 F.3d 209, 214 (5th Cir.2000); Wofford, 177 F.3d at 1239. Indeed, the Supreme Court has held that § 2255 “was intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined.” Hill v. United States, 368 U.S. 424, 427, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). “[T]he sole purpose [of § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum.” United States v. Hayman, 342 U.S. 205, 219, 72 S.Ct. 263, 96 L.Ed. 232 (1952). Under these circumstances, there would be no logical reason for Congress to distinguish between § 2255 motions and § 2241 habeas corpus applications for the purpose of permitting a prisoner to file a second or successive petition challenging his conviction without a certificate of authorization. See Sanders v. United States, 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (“Since the motion procedure [pursuant to § 2255] is the substantial equivalent of federal habeas corpus, we see no need to differentiate the two for present purposes.”).
Consistent with this analysis, the Court of Appeals for the Seventh Circuit has held that the effect of the changes made by AEDPA, particularly the addition of the “except as provided by section 2255” clause to 2244(a), is to “channel[ ] all sue *1055 cessive collateral attacks on a federal court’s conviction or sentence into the prior-approval mechanism of § 2244(b)(8). Collateral attacks that do not address the conviction or sentence are unaffected by this channeling apparatus (although § 2244(a) bars successive petitions under § 2241 directed to the same issue concerning execution of a sentence).” Valona v. United States, 138 F.3d 693, 695 (7th Cir.1998) (Easterbrook, J.).
Significantly, in Barapind v. Reno, 225 F.3d 1100 (9th Cir.2000), we applied the Seventh Circuit’s analysis in Valona in the course of holding that § 2244(a) did not bar a § 2241 habeas petition filed by an INS detainee. We observed that, “[a]s noted by the Seventh Circuit, § 2244(a) prevents a federal inmate from using § 2241 ‘to call into question the validity of a conviction or sentence that has already been subject to collateral review.’ ” Barapind, 225 F.3d at 1111 (quoting Valona, 138 F.3d at 694). Barapind’s challenge to a decision of the BIA was not precluded because it did not call into question the validity of a conviction or sentence and “because § 2244(a) [only] bars successive petitions seeking review of the propriety of a detention ‘pursuant to a judgment of a court of the United States.’ ” Id. at 1111 (quoting 28 U.S.C. § 2244(a)).
Subsequently, the Court of Appeals for the Tenth Circuit appeared to have adopted the holding in Valona. See Ackerman v. Novak, 483 F.3d 647 (10th Cir.2007) (per curiam). Thus, it observed:
The reference to § 2255 in the AEDPAamended version of § 2244(a) appears to incorporate the appellate pre-authorization gatekeeping requirements of § 2255[h], which sets forth the grounds upon which a circuit court may authorize a second or successive § 2255 motion, and, in turn, incorporates the pre-authorization procedures in § 2244(b)(3).
Id. at 650.
More recently, however, in Stanko v. Davis, 617 F.3d 1262 (10th Cir.2010), the Tenth Circuit declined to follow Ackerman because it involved a challenge to a military court martial and a military court is not a “court of the United States,” as the term is used in § 2244(a). “As a consequence, § 2244(a) did not apply to the § 2241 petition before[the panel], which challenged a military court-martial conviction.” Stanko, 617 F.3d at 1266. And Ackerman’s discussion of the pre-authorization issue was dicta. Id.
Significantly, Stanko did not involve a collateral attack on a judgment of conviction or sentence of the kind that Valona and Barapind held required a certificate of authorization. Instead, Stanko alleged that the Bureau of Prisons had improperly determined that he was not qualified to participate in a residential drug abuse program and that, consequently, he was not eligible for a one-year reduction in his sentence under 18 U.S.C. § 3621(e)(2)(B). This relief “challenges the execution of a federal prisoner’s sentence,” Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir.2001), rather than the validity of the judgment of conviction and sentence. Consequently, there was no reason why Congress would have prescribed a certificate of authorization for such challenges. Indeed, the conditions under which a certificate of authorization may be issued, see § 2255(h), simply do not lend themselves to challenges to the execution of a federal sentence, which generally relate to “such matters as the administration of parole, computation of a prisoner’s sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.” Jiminian, 245 F.3d at 146.
*1056 Under these circumstances, all that was necessary to resolve the issue of the necessity of prior appellate authorization for Stanko’s petition was to say that the relief sought was not the kind of relief, namely, a collateral attack on a judgment of conviction, for which Congress intended to impose the prior-authorization requirement. Indeed in Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348 (11th Cir.2008), the Eleventh Circuit so held in a run-of-the-mill case in which a federal prisoner filed a successive petition challenging a decision of the Parol Commission on the same ground that he had raised unsuccessfully in an earlier petition. Just as in Stanko, the habeas corpus application in Antonelli raised claims traditionally cognizable under § 2241. Id. at 1352. Thus, “it was not subject to gatekeeping in [the Eleventh Circuit].” Id. Nevertheless, it was subject to dismissal, as a second or successive petition because “[s]uccessive § 2241 petitions by federal prisoners are subject to threshold dismissal in the district court....” Id.
Instead of such a common-sense disposition of the case, Stanko engaged in a protracted discussion of the issue why the “except” clause did not apply to any petition filed pursuant to § 2241. Before proceeding to dissect this analysis, I pause to emphasize the fact that the holding in Stanko compels the dismissal of Alaimalo’s petition, even if he was not required to obtain authorization to file his fourth § 2241 application seeking relief on grounds identical to those presented in two of his three prior applications. Thus, Stanko expressly held that “[t]he statutory limitations on a federal inmate’s ability to file multiple § 2241 petitions are contained in 28 U.S.C. § 2244(a),” 617 F.3d at 1266, and that those limitations invariably require the dismissal of repetitive § 2241 applications that raise no new issues, id. at 1270. Indeed, Stanko acknowledged that:
When Congress amended § 2244(a) in 1996 as part of AEDPA, it removed the provision that had previously excepted from the statutory bar petitions raising new claims. In its current form, the plain language of § 2244(a) applies both to petitions that present a claim previously raised and adjudicated and those that raise a new claim. As currently worded, § 2244(a) could be read to bar any second or subsequent habeas petition that challenges 'the legality of [the petitioner’s] detention’ if a court has previously determined that the detention was legal. This could include claims that were raised but not adjudicated in a previous petition and even those that could not have been raised in a previous petition.

Id.

Notwithstanding its recognition that “§ 2244(a) could be read to bar any second or subsequent habeas petition,” Stanko held, for reasons that are not relevant here, that second or successive petitions that raise claims that had not previously been decided were not subject to such a preclusive reading. Consistent with this holding, Stanko upheld the dismissal of four of the six claims that Stanko raised on the ground that they asserted the same legal grounds as a prior petition. Id. at 1270; accord Antonelli, 542 F.3d at 1352. Nevertheless, Stanko held that § 2244(a) did not preclude Stanko from raising the “two remaining claims [that] appeared] to be new,” 617 F.3d at 1270, although those claims were subject to dismissal under the common law doctrine of the abuse of the writ, id. at 1272. Thus, Stanko clearly holds that § 2241 applications raising claims that have been rejected in prior such applications are barred by § 2244(a) and, because the subsection authorizing the filing of successive petitions without authorization does not apply to such appli *1057 cations, they are precluded altogether. As noted above, this holding, if applied here, would require the dismissal of Alaimalo’s third successive application.
Nevertheless, the majority ignores the holding in Stanko and its implications for the present case. Instead, it focuses on one aspect of Stanko’s holding, namely, that § 2244(a) does not require authorization by the appropriate court of appeals for a second or successive application pursuant to § 2241 challenging a judgment of conviction. The majority expressly adopts Stanko’s analysis of the “except” clause of § 2244(a) and holds, without any discussion, much less consideration of either Valona or Barapind, that “because Alaimalo’s § 2241 petition is permitted by the ‘escape hatch’ of 28 U.S.C. § 2255(e), his failure to seek prior-certification from the Court of Appeals did not divest the district court of jurisdiction in this case.” Majority Op. at 1046, n. 1.
This holding conflates two separate issues. The first is whether an application for a writ of habeas corpus pursuant to § 2241 may be filed notwithstanding the general prohibition against such petitions contained in § 2255(e). The second is whether, assuming he may file such a petition at all, a prisoner may file successive applications pursuant to § 2241 after his initial application was denied — and, as in the present case, the denial was not timely appealed. The fact that § 2255(e) may permit an initial application pursuant to § 2241 does not answer the question whether he may file successive petitions without the authorization of a court of appeals.
Nor does Stanko provide persuasive grounds for holding that the “except” clause of § 2244(a) does not incorporate the certificate of authorization requirement of § 2255(h). First, Stanko correctly observed that “the plain language of § 2255(h) applies only to § 2255 motions.” Specifically, “[sjubsection (h) states that ‘[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals.’ ” 617 F.3d at 1266 (quoting § 2255(h)). Nevertheless, as previously noted, the fact that § 2255(h) applies by its terms to successive motions brought pursuant to § 2255 is not determinative because the certificate of authorization requirement is incorporated by reference in the “except as provided in § 2255” clause of § 2244(a). Indeed, this drafting method — incorporation by cross-reference — was used by Congress in § 2255(h) to incorporate the prior-authorization requirement “as provided in section 2244.”
Second, Stanko ignores the plain language of § 2244(a) preceding the “except” clause, which confers discretion on the district court to decline or, conversely, to entertain a second or successive petition for a writ of habeas corpus pursuant to § 2241, “except as provided in § 2255.” This clause plainly operates to limit the exercise of that discretion. Thus, if it means anything, it must mean that, just as in the case of § 2255, the district court judge must dismiss a petition challenging a judgment of conviction under § 2241 unless a certificate of authorization is granted by the appropriate court of appeals.
Third, Stanko assumed erroneously that, if the “except” clause of § 2244(a) is construed to require a certificate of authorization, that requirement would apply to any motion for a writ of habeas corpus that could be brought pursuant to 28 U.S.C. § 2241, many of which Congress could not possibly have intended to restrict in this way. See Stanko, 617 F.3d at 1267. But this argument simply ignores the fact that, as we held in Barapind, § 2244(a) operates only to “prevent[] a federal inmate from using § 2241 to call into question the *1058 validity of a conviction or sentence that has already been subject to collateral review.” 225 F.3d at 1111 (internal quotation marks omitted); see also Vasquez v. Parrott, 318 F.3d 387, 391-92 (2d Cir.2003) (“It is manifest that in designing the standards under which a second or successive petition would be allowed, Congress was contemplating only petitions that challenged the lawfulness of the conviction.... ”); In re Cain, 137 F.3d 234, 235 (5th Cir.1998) (noting that “section 2244 — one of the gatekeeping provisions of the AEDPA — was enacted primarily to preclude prisoners from repeatedly attacking the validity of their convictions and sentences.”).
Fourth, Stanko suggested that, “if the bar erected by § 2244(a) incorporated the gatekeeping provisions of § 2255(h), federal inmates bringing § 2241 petitions would inexplicably be subject to far greater restrictions than would other types of inmates who might bring § 2241 petitions.” 617 F.3d at 1268. This argument inexplicably ignores the fact that AEDPA “incorporates reforms to curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases.” H.R.Rep. No. 104-518, at 111 (1996), reprinted in 1996 U.S.C.C.A.N. 944. Consequently, it is not surprising that “AEDPA is designed primarily to preclude petitions brought by prisoners seeking to escape the consequences of their criminal behavior by challenging the validity ... of their convictions or sentences.” In re Cain, 137 F.3d at 235 n. 1.
Finally, Stanko argued that subjecting second or successive petitions pursuant to § 2241 to the gatekeeping mechanism to which all collateral attacks on judgments of conviction are subject would somehow impede the ability of prisoners to obtain habeas corpus relief pursuant to § 2241 if they came within the escape hatch of § 2255. This argument, as I have already observed, simply conflates the issue of the availability of the escape hatch, as a means of filing an initial petition, with the analytically separate issue of the number of times such a petition may be filed. See Stanko, 617 F.3d at 1268.
In sum, a federal prisoner is barred from challenging his conviction in a second or successive habeas corpus application pursuant to § 2241, without a certificate of authorization, even if the first petition was properly filed pursuant to § 2241. Alaimalo failed to obtain a certificate authorizing him to file his third successive petition pursuant to § 2241, the denial of which is the subject of this appeal. Nor could he meet the relevant condition for obtaining such a certificate because his petition does not rely on “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” 28 U.S.C. § 2255(h)(2). Nor is it based on newly-discovered evidence of the kind prescribed there. Under these circumstances, the district court did not have jurisdiction to entertain the petition and we have no jurisdiction to hear the appeal. Burton v. Stewart, 549 U.S. 147, 152-53, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007); United States v. Lopez, 577 F.3d 1053, 1061 (9th Cir.2009).
II. Other Impediments to The Availability of Relief Pursuant to § 2241
While the majority relies on Stanko v. Davis, 617 F.3d 1262 (10th Cir.2010), for its holding that the district court had jurisdiction to entertain Alaimalo’s third successive petition, Majority Op. at 1046 n. 1, it ignores both the holding in Stanko that § 2244(a) bars second or successive § 2241 petitions raising previously rejected claims and the dismissal of the successive application in Stanko that raised such a claim. *1059 Nevertheless, the majority does at least recognize two possible impediments to Alaimalo’s current petition: the abuse of the writ doctrine and the law of the case doctrine. The majority holds that the law of the case doctrine is not applicable here because “failure to entertain Alaimalo’s claim would result in manifest injustice.” Majority Op. at 1050. And the majority rejects the abuse of the writ doctrine on the ground that the government bears the burden to raise it and failed to do so.
I first address the issue of manifest injustice, because it relates both to the law of the case and the abuse of the writ doctrines, although the majority does not rely on it with respect to the latter. I then go on to address separately the other arguments made by the majority with respect to each of those doctrines, namely, that the law of the case established in Alaimalo v. United States, 317 Fed.Appx. 619 (9th Cir.2008), was clearly erroneous and that the law of the case doctrine is not applicable here, because the law of the case was not made in the same case as the present proceeding. And then, finally, I address the majority’s objection to the application of the abuse of the writ doctrine.
A. The Threshold Issue: “Manifest Injustice”
We have had occasion to observe that “[t]he existence of special circumstances is required before a finding of manifest injustice .... At a minimum, the challenged decision should involve a significant inequity or the extinguishment of a right before being characterized as manifestly unjust.” Jeffries v. Wood, 114 F.3d 1484, 1492 (9th Cir.1997) (en banc) (internal citations omitted). Of course, for reasons already indicated at the outset, the earlier denials of the writ in this case do not satisfy this test because the only relief of which they deprived Alaimalo was a meaningless piece of paper. Indeed, the majority concedes that the writ it orders the district court to grant will have no effect on Alaimalo’s sentence. Majority Op. at 1050. Nevertheless, the majority suggests that it is necessary to vacate the challenged counts of conviction in order to remove “the possibility that [Alaimalo] will be subject to their adverse collateral consequences.” Id. These consequences are not specified.
More significantly, the cases on which the majority relies provide no support for the proposition that failing to eliminate the possibility of any of these consequences would constitute a “fundamental miscarriage of justice” or a “manifest injustice.” Instead, those cases arose in an area of law — namely, the “case or controversy” inquiry, under Article III, § 2 of the Constitution — in which the Supreme Court has accepted “the most generalized and hypothetical consequences as sufficient to avoid mootness in challenges to [a] conviction.” Spencer v. Kemna, 523 U.S. 1, 10, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). Such speculative possibilities may be sufficient to overcome the doctrine of mootness, see id., or even the concurrent sentence doctrine, see Ball v. United States, 470 U.S. 856, 865, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). Nevertheless, the suggestion that they constitute a “fundamental miscarriage of justice” or a “manifest injustice” renders those terms meaningless.
Indeed, in Spencer v. Kemna, the Supreme Court began a retreat from “its earlier willingness to presume adverse consequences sufficient to defeat a claim of mootness.” 7 Wayne R. LaFave et al., Criminal Procedure § 27.5(a) (3d ed. 2007). Specifically, it held that the possibility that a parole violation conviction could be used to impeach the defendant’s testimony in a subsequent criminal prosecution was “purely a matter of speculation,” and insufficient to permit him to *1060 challenge a revocation of parole after he had served his sentence, Spencer, 523 U.S. at 16, 118 S.Ct. 978, implicitly overruling dictum in Ball, 470 U.S. at 865, 105 S.Ct. 1668. Similarly, in Maleng v. Cook, 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989), the Supreme Court held that a defendant who had completed serving his sentence could not obtain habeas corpus relief with respect to that conviction merely because it could possibly be used to enhance his sentence if he committed a subsequent crime, id. at 492, 109 S.Ct. 1923, although it held open the possibility of a challenge to an actual subsequent sentence so enhanced, id. at 494, 109 S.Ct. 1923. Indeed, even before Spencer or Maleng, the Supreme Court had decided that, while challenges to certain remaining counts of an indictment were not moot, it would “decline as a discretionary matter” to rule on their validity. Barnes v. United States, 412 U.S. 837, 848 n. 16, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).
B. The Law of the Case Doctrine
1. The Definition of “Clearly Erroneous”
The foregoing consideration aside, as the majority recognizes, Majority Op. at 1049, 1050, under the law of the case doctrine, to the extent here relevant, a prior decision should be followed unless it was clearly erroneous and its enforcement would work a manifest injustice. Hegler v. Borg, 50 F.3d 1472, 1475 (9th Cir.1995); see also Arizona v. California, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (“Under law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice.”). The phrase “clearly erroneous” suggests something more than simple error. As the Court of Appeals for Seventh Circuit put it:
[Under the clearly-erroneous standard, we cannot meddle with the prior decision of this or a lower court simply because we have doubts about its wisdom or think we would have reached a different result. To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.
Parts and Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir.1988). In sum, to be clearly erroneous, the prior panel’s decision “must be dead wrong.” Id. This stringent standard “rests on good sense and the desire to protect both court and parties against the burdens of repeated reargument by indefatigable diehards.” 18B Charles A. Wright et al., Federal Practice and Procedure § 4478 (2d ed. 2002).
The prior holding of two district court judges, and three judges of the Ninth Circuit that “28 U.S.C. § 2255 was not an inadequate or ineffective remedy so as to allow Alaimalo to proceed under § 2241,” Alaimalo v. United States, 317 Fed.Appx. 619, 620 (9th Cir.2008), was not clearly erroneous. Indeed, although we need not go that far to decide this case, the prior holdings were not error at all. Specifically, a motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 may be entertained notwithstanding the petitioner’s “fail[ure] to apply for relief, by motion [pursuant to 28 U.S.C. § 2255], to the court which sentenced him, or that such court has denied him relief [if] the remedy by motion is inadequate or ineffective to test the legality of his detention.” 28 U.S.C. § 2255(e). Alaimalo did initially file a petition for relief “to the court which sentenced him,” although he did not chai *1061 lenge his conviction on the counts of importation on the ground on which Cabaccang ultimately prevailed. Nor, if he had raised the issue, could he have obtained relief from the district court because Ninth Circuit law had not changed since he unsuccessfully raised the issue on direct appeal. Cf. Davis v. United States, 417 U.S. 333, 341-42, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (where Court of Appeals decision changed the law since petitioner’s trial and appeal, law of the case doctrine did not bar a new hearing on a legal issue previously determined against him). Nevertheless, it is not so clear, as the majority suggests, that this circumstance rendered the remedy by motion, pursuant to 28 U.S.C. § 2255, “inadequate or ineffective to test the legality of his detention.”
First, nothing would have precluded Alaimalo from seeking a change in applicable Ninth Circuit law. Indeed, at the time he filed his first petition, the Court of Appeals for the First Circuit had already ruled in an opinion that would be relied upon in Cabaccang, that a defendant’s conduct in transporting drugs from one location within the United States to another, despite traveling over international waters, did not constitute “importation” within the meaning of 21 U.S.C. § 952(a). See United States v. Ramirez-Ferrer, 82 F.3d 1131, 1144 (1st Cir.1996) (en banc). While the district court could not have granted Alaimalo’s petition, because it was without power to alter prior Ninth Circuit precedent or the law of the case established on direct appeal, see Davis, 417 U.S. at 341-42, 94 S.Ct. 2298, the Ninth Circuit could have granted such relief. Indeed, Alaimalo’s appeal was working its way through the Ninth Circuit, almost in lockstep with Cabaccang, and Cabaccang succeeded. Under these circumstances, relief by motion pursuant to 28 U.S.C. § 2255 was no more inadequate or ineffective to test the legality of Alaimalo’s detention than a direct appeal was to test the identical challenge raised by Cabaccang.
Significantly, in analogous circumstances, the Supreme Court has held that a procedural forfeiture occasioned by the failure of a state prisoner to make a timely objection was not excused by the alleged futility of such a timely objection. Engle v. Isaac, 456 U.S. 107, 130, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). As Justice O’Con-nor wrote for the Supreme Court:
If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.
Id. (footnote omitted); see also Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (“As we clearly stated in Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.”) (internal quotation marks and parallel citation omitted).
The change of law that Justice O’Connor suggested was possible actually occurred here during the pendency of Alaimalo’s appeal, at the behest of another defendant who raised the same claim. Indeed, it would not be farfetched to suggest that Alaimalo might have prevailed had he first raised the issue on appeal from the denial of his § 2255 motion and moved to stay his appeal, after it became apparent that we were prepared to consider the Cabaccang claim en banc. While we generally do not consider claims raised for the first time on appeal, an application to add the Cabaccang claim would have come within the *1062 criteria we have adopted for invoking our discretion to review such a claim, including, inter alia, “when a new issue arises while appeal is pending because of a change in the law....” Cold Mountain v. Garber, 375 F.3d 884, 891 (9th Cir.2004) (O’Scannlain, J.) (quoting Bolker v. Comm’r, 760 F.2d 1039, 1042 (9th Cir.1985)).
In sum, it was hardly clear error to hold that Alaimalo could have raised his claim in a proceeding pursuant to 28 U.S.C. § 2255. Indeed, the district court judges who dismissed Alaimalo’s petitions pursuant to § 2241 expressly relied on the unique facts discussed above to demonstrate that the remedy provided by § 2255 was adequate and effective to test Alaimalo’s claim. See Alaimalo v. Shultz, No. 05-cv-300 (E.D.Cal. Sept. 29, 2005); Alaimalo v. United States, No. 06-cv-6872 (C.D. Cal. Sept. 25, 2007). The three judges of the Ninth Circuit presumably did the same when they affirmed the denial of the writ of habeas corpus. See Alaimalo v. United States, 317 Fed.Appx. 619 (9th Cir.2008).
Moreover, even in the absence of such unique circumstances, the inadequacy of the remedy afforded by § 2255 is not as clear cut as the majority suggests. First, the Court of Appeals for the Fifth, Seventh, and Eleventh Circuits have held that the so-called “escape-hatch clause” or “savings clause” of 28 U.S.C. § 2255(e) applies to a claim that was or could have been brought pursuant to § 2255 only when:
1) that claim is based on a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner’s trial, appeal, or first § 2255 motion.
Wofford v. Scott, 177 F.3d 1236, 1244 (11th Cir.1999); accord Reyes-Requena v. United States, 243 F.3d 893, 904 (5th Cir.2001) (following Wofford); In re Davenport, 147 F.3d 605, 611 (7th Cir.1998). Moreover, in Love v. Menifee, 333 F.3d 69, 73 (2d Cir.2003), the Second Circuit held that “Section 2255 is ‘inadequate or ineffective,’ however, only when a ‘failure to allow for collateral review would raise serious constitutional questions’ ...” (quoting Triestman v. United States, 124 F.3d 361, 377 (2d Cir.1997)).
These extraordinary limitations underscore the fact that “[t]he savings clause and habeas corpus writs ... exist in a delicate balance.” Reyes-Requena, 243 F.3d at 901 n. 19. Because “[s]ection 2255 is the primary collateral relief mechanism for federal prisoners,” caselaw is clear that “the savings clause cannot create a detour around § 2255.” Id.; see also Moore v. Reno, 185 F.3d 1054, 1055 (9th Cir.1999) (per curiam) (“the dismissal of a subsequent § 2255 motion pursuant to 28 U.S.C. § 2244(b) does not render federal habeas relief an ineffective or inadequate remedy.”). So, for example, § 2255(f) contains a one-year statute of limitation and § 2255(h) provides that a second or successive motion can only be filed if it is based on newly discovered evidence that would have resulted in a not guilty verdict or if it is based on “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” Obviously, a prisoner’s inability to comply with these conditions does not render the remedy pursuant to § 2255 “inadequate or ineffective to test the legality of his detention.” See Love, 333 F.3d at 73 (Section 2255 is not “inadequate or ineffective” simply because “its gatekeeping provisions bar review of a petitioner’s claim.”). Otherwise, the substantive and procedural barriers contained in *1063 § 2255 would be rendered meaningless and “Congress would have accomplished nothing at all in its attempts — through statutes like AEDPA—to place limits on federal collateral review.” Triestman v. United States, 124 F.3d 361, 376 (2nd Cir.1997) (Calabresi, J.).
Another reason for the extremely narrow construction of the savings clause is that it was originally intended to encompass only “practical difficulties” that a petitioner might have encountered in complying with the directive in § 2255 that a petition must be filed in the district court “which imposed the sentence.” See United States v. Hayman, 342 U.S. 205, 219, 72 S.Ct. 263, 96 L.Ed. 232 (1952). Nevertheless, while “[t]he question is not free from doubt,” after an exhaustive analysis of the legislative history, the Eleventh Circuit concluded that the savings clause had somehow morphed into a vehicle that “is concerned with more than the practical difficulties.” Wofford, 177 F.3d at 1241. This conclusion represents the prevailing view of the savings clause.
In order to give the language of the savings clause some effect, and yet avoid a construction of the savings clause that would render meaningless the constraints placed upon the issuance of a § 2255 writ, it has generally been construed to permit the filing of a habeas corpus petition pursuant to § 2241 only when a change in statutory construction adopted, and made retroactive, by the Supreme Court established that the petitioner had been found guilty of what turned out to be a nonexistent offense. See e.g., In re Davenport, 147 F.3d 605, 611 (7th Cir.1998). As the Seventh Circuit explained, “[b]ecause Congress may have overlooked the possibility that new and retroactive statutory decisions [by the Supreme Court] could support collateral review, we held in Davenport that for this small class of situations § 2255 is ‘inadequate or ineffective to test the legality of [the] detention.’ ” Taylor v. Gilkey, 314 F.3d 832, 835 (7th Cir.2002) (alteration in original) (quoting 28 U.S.C. § 2255(e)).
Nevertheless, in granting Alaimalo relief pursuant to the savings clause of § 2255(e), the majority ignores altogether the carefully crafted limitations on the availability of habeas corpus relief. Indeed, a detailed analysis of the narrow scope of the savings clause is not to be found in the cases cited by the majority, see Majority Op. at 1046-47, only because they held that the petitioners were not otherwise entitled to relief pursuant to the savings clause. See Stephens v. Herrera, 464 F.3d 895 (9th Cir.2006); Ivy v. Pontesso, 328 F.3d 1057 (9th Cir.2003); Lorentsen v. Hood, 223 F.3d 950 (9th Cir.2000). The present case is the first Ninth Circuit case to grant relief pursuant to the savings clause of § 2255(e), and it does so in a case where the petitioner is unable to meet the stringent conditions that other circuits have adopted. In so doing, it needlessly creates a clear conflict among the circuits in a case in which the relief it orders will give petitioner nothing.
2. The Majority’s “Same Case” Dictum
The majority suggests, without expressly holding, that the law of the case doctrine does not apply here because each of Alaimalo’s petitions were separate and were not part of the same case. See Majority Op. at 1049-50. The idea that repeated attacks on the same judgment of conviction seeking identical relief are not part of the same case is simply wrong. See, e.g., DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir.2004); Shore v. Warden, Stateville Prison, 942 F.2d 1117, 1123 (7th Cir.1991); Raulerson v. Wainwright, 753 F.2d 869, 875 (11th Cir.1985). Indeed, the *1064 savings clause in § 2255(e) on which the majority relies to permit the filing of a petition pursuant to § 2241 is simply a way of avoiding the limitations on petitions pursuant to § 2255 in very narrow circumstances. The scope of the remedies provided by these two statutes is the same. Compare 28 U.S.C. § 2241(c)(3) with 28 U.S.C. § 2255(a); see Kinder v. Purdy, 222 F.3d 209, 214 (5th Cir.2000); Wofford v. Scott, 177 F.3d 1236, 1241 (11th Cir.1999). And § 2255 petitions have always been regarded as part of the underlying criminal case. See United States v. Martin, 226 F.3d 1042, 1047 n. 7 (9th Cir.2000); Grady v. United States, 929 F.2d 468, 470 (9th Cir.1990). There is no logical reason for treating § 2241 petitions differently.
Nevertheless, the majority claims to find support in Ninth Circuit caselaw for the proposition that the law of the case doctrine has not been applied “to claims in successive habeas petitions.” Majority Op. at 1049. What the majority does not, and cannot, say is that we have held that the law of the ease doctrine cannot apply to such claims. On the contrary, the only cases it cites are those in which we have applied the law of the case doctrine to habeas corpus petitions following a panel’s review of the case on direct appeal. See id. (citing Phelps v. Alameida, 569 F.3d 1120, 1140 n. 23 (9th Cir.2009), and United States v. Garcia, 77 F.3d 274, 276 (9th Cir.1996)). The reason that we have not applied it to claims in successive petitions is that we have had no occasion to do so. Indeed, two of the cases that the majority cites for the proposition that “this circuit has not applied [the law of the case doctrine] to claims in successive habeas petitions” did not even involve the law of the case doctrine. See id. at 1049 (citing Barapind v. Reno, 225 F.3d 1100, 1110-12 (9th Cir.2000), and Farmer v. McDaniel, 98 F.3d 1548, 1557-58 (9th Cir.1996)).
Moreover, there is no basis for the majority’s suggestion “that there is a split among out sister circuits as to whether to apply the law of the case to successive habeas petitions.” Majority Op. at 1050. While the Second, Seventh, and Eleventh Circuits have applied the law of the case doctrine to successive habeas petitions, DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir.2004); Shore v. Warden, Stateville Prison, 942 F.2d 1117, 1123 (7th Cir.1991); Raulerson v. Wainwright, 753 F.2d 869, 875 (11th Cir.1985), the two cases that the majority cites as holding to the contrary contain language that barely rises to the level of dictum. Rosales-Garcia v. Holland, 322 F.3d 386, 398 n. 11 (6th Cir.2003) (en banc) (‘Whether successive habeas petitions constitute stages in a single, continuing lawsuit is a question that should be carefully considered[, although we do not decide the question....”) (internal citation omitted); Lacy v. Gardino, 791 F.2d 980, 985 (1st Cir.1986) (“We need not decide ... whether the two habeas petitions are the same or different cases requiring the application of either the law of the ease doctrine or stare decisis.”). Thus, while there does not presently exist a circuit split on the issue, the majority opinion goes a long way towards creating one.
C. Abuse of the Writ Doctrine
On the assumption that the abuse of the writ doctrine may otherwise be applicable here, the majority suggests that “[t]he government bears the burden of pleading abuse of the writ, ... but it did not do so here.” Majority Op. at 1049 (internal citation omitted). The abuse of the writ, as it is generally understood, applies “where a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, or engages in other conduct that disentitle[s] him to the relief he seeks.” Schlup v. Delo, 513 U.S. 298, 318 n. 34, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) *1065 (internal quotation marks omitted). While the government generally bears the burden of pleading abuse of the writ, there is also general agreement that the abuse of the writ may be raised sua sponte. Indeed, in Stanko v. Davis, 617 F.3d 1262 (10th Cir.2010), upon which the majority exclusively relies in holding that Alaimalo could file multiple petitions pursuant to § 2241 without any statutory restraint, the Tenth Circuit sua sponte invoked the abuse of the writ doctrine and dismissed Stanko’s successive habeas corpus petition. Id. at 1270-72. Accord United States v. Talk, 158 F.3d 1064, 1067 (10th Cir.1998) (holding court may raise procedural default sua sponte “if doing so will further the interests of judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice”) (internal quotation marks omitted), abrogated on other grounds by Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); Femia v. United States, 47 F.3d 519, 522-23 (2d Cir.1995); United States v. Fallon, 992 F.2d 212, 213 (8th Cir.1993); Andre v. Guste, 850 F.2d 259, 261-62 (5th Cir.1988); cf. Barapind v. Reno, 225 F.3d 1100, 1111 n. 6 (9th Cir.2000).
These holdings reflect the obvious fact that successive petitions implicate more than just the interests that one party may have in preserving the result of an earlier proceeding. As Professors Wright and Miller observe with respect to the closely analogous context of the failure to plead preclusion, the doctrine
goes beyond the interest of at least one party in repose and avoiding the burden of relitigation. Courts share these interests, and are concerned as well with avoiding inconsistent decisions. As courts became increasingly concerned with their own interests in forestalling repetitive litigation, it has become increasingly common to raise the question of preclusion on the court’s own motion.
18 Charles A. Wright et al. Federal Practice and Procedure § 4405 (2d ed. 2002). Indeed, we have had occasion to observe that the “[p]reclusion doctrine encompasses vindication of both public and private interests____ [T]he most purely public purpose served by preclusion rules is that of preserving the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same manner were twice litigated to inconsistent results.” Clements v. Airport Auth., 69 F.3d 321, 330 (9th Cir.1995) (internal quotation marks and citation omitted). The public purpose is implicated for yet another reason in habeas corpus cases for, as Judge Friendly observed, “the most serious single evil with today’s proliferation of collateral attack is its drain upon the resources of the community — judges, prosecutors, and attorneys appointed to aid the accused.... Today of all times we should be conscious of the falsity of the bland assumption that these are in endless supply.” Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgment, 38 U. Chi. L. Rev. 142, 148 (1970).
CONCLUSION
The history of this case involves a terrible abuse of the writ in more than just its technical legal definition. The majority today sanctions a system in which a prisoner can bring endless petitions for a writ of habeas corpus for no apparent purpose until he finds two judges, as petitioner has here, who are willing to overthrow the work of three district court judges and three judges of the Ninth Circuit. In his seminal article on the writ of habeas corpus, from which I quoted above, Judge Friendly observed that “[t]he proverbial man from Mars would surely think we must consider our system of criminal jus *1066 tice terribly bad if we are willing to tolerate such efforts at undoing judgments of conviction.” Id. at 145. Because I am not as tolerant of such efforts as my two colleagues, I respectfully dissent.