**In re James DAVENPORT and Sherman Nichols, Petitioners.**

Nos. 97–9095, 97–9097.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1998.

Decided June 18, 1998.

James Davenport, United States Penitentiary, Terre Haute, IN, pro se.

Sherman Nichols, Federal Correctional Institution, Pekin, IL, pro se.

Haywood E. McDuffie, Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, Richard N. Cox, Office of the United States Attorney, Urbana, IL, Stephen A. Kubiatowski (argued), Office of the United States Attorney, Springfield, IL, for Respondent in No. 97–9095.

Jerold S. Solovy, Megan B. Poetzel (argued), Jenner & Block, Chicago, IL, for Amicus Curiae.

Haywood E. McDuffie, Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, Stephen A. Kubiatowski (argued), Office of the United States Attorney, Springfield, IL, for Respondent in No. 97–9097.

Before POSNER, Chief Judge, and ROVNER and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

We consolidated and directed briefing and argument of petitions by two federal prisoners for leave to seek postconviction relief that the district courts thought barred by the Antiterrorism and Effective Death Penalty Act of 1996. The principal question we must decide is when if ever a federal prisoner can use the habeas corpus statute, 28 U.S.C. §§ 2241–2254, to get around the bar that the Antiterrorism Act places athwart successive motions under 28 U.S.C. § 2255, the federal prisoner's habeas corpus substitute.

Davenport was convicted in 1991 of the federal crime of being a felon in possession of a firearm. The sentence was enhanced under the "armed career criminal" statute, 18 U.S.C. § 924(e), in part on the basis of a 1981 conviction for burglary. After we affirmed the 1991 judgment in *United States v. Davenport*, 986 F.2d 1047 (7th Cir.1993), he filed a motion under 28 U.S.C. § 2255 to vacate the sentence on the ground that the enhancement violated the double jeopardy clause. The motion was denied and he did not appeal, but last year he sought habeas corpus, claiming among other things that the 1981 burglary conviction was not within the scope of the armed career criminal act. The district judge deemed the motion one filed under section 2255 and so rejected it because Davenport had not asked our leave to file a successive 2255 motion, as required by section 2244(b)(3), which the last paragraph of section 2255 makes applicable to section 2255 motions.

Nichols was convicted in 1990 of (among other things) the use of a firearm in the commission of a drug offense. 18 U.S.C. § 924(c). We affirmed, *United States v. Nichols*, 937 F.2d 1257 (7th Cir.1991), and later affirmed as well the denial of his 2255 motion complaining of ineffective assistance of counsel. *Nichols v. United States*, 28 F.3d 1216, 1994 WL 328296 (7th Cir.1994) (mem.). Then the Supreme Court decided *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), holding that "use" in

section 924(c) does not include mere possession, as had been the law of this circuit when Nichols was convicted. Nichols filed another motion for postconviction relief the following year, styling it an application for a writ of coram nobis under 28 U.S.C. § 1651 (the "All Writs Act"). The district court rejected the motion as an attempt to file a successive 2255 motion without the permission of the court of appeals.

The form in which these cases come to us is a little puzzling. Although they are styled as petitions for leave to file successive 2255 motions (actually Davenport's petition is styled as one under 2244(b) for leave to file an application for habeas corpus, but 2244(b) is applicable only to state prisoners), neither petitioner had attempted to file such a motion in the district court, no doubt fearing that it would be clearly barred by the Antiterrorism Act. For the Act amended section 2255 to allow successive 2255 motions to be filed only if the prisoner tenders either newly discovered evidence that shows he's not guilty or a new rule of constitutional law made retroactive by the Supreme Court, and our two prisoners present neither ground for relief. They sought relief under different provisions from 2255—under 28 U.S.C. § 2241 in Davenport's case and 28 U.S.C. § 1651 in Nichols's case—and the district court in effect denied them relief under those provisions. The way to challenge adverse final action by the district court is to appeal.

It is true that Davenport and Nichols argue that they are *also* entitled to file a successive 2255 motion; they claim that the amendment to 2255 limiting the grounds for filing successive motions do not apply to them because they filed their first 2255 motions before the Act was passed. But if this is right (it isn't, as we're about to see), it is unclear why they are asking our leave to file a successive motion. The requirement of seeking leave was also added by the Antiterrorism Act, so if the Act is inapplicable, leave need not be sought. Once again their real beef is that the district court should have allowed their pleadings to be filed, whether the pleading was labeled a 2255 motion, an application for habeas corpus, or anything else.

But because the petitions they filed in this court contain all the information that Fed. R.App. P. 3(c) requires of a notice of appeal, and were filed within the ·time allowed for appealing, the mislabeling of the appeals as petitions is harmless. So we shall treat them as notices of appeal and from here on refer to Davenport and Nichols as appellants rather than petitioners. This means, incidentally, that the prohibition in 28 U.S.C. § 2244(b)(3)(E) against the filing of a petition for rehearing or certiorari to challenge the grant or denial by the court of appeals of a second or successive application for habeas corpus is inapplicable, since we are treating the pleadings in this court as appeals from the denial by the district courts of applications for habeas corpus, rather than as applications to us for leave to file successive section 2255 motions.

■ We can set quickly to one side the All Writs Act and the esoteric writs (not only coram nobis, but also audita querela) that Nichols seeks under it. He claims that he is imprisoned for having committed a nonexistent crime, the mere possession of a firearm in connection with a drug offense. The relief sought (his freedom), and the ground on which it is sought (that the crime for which he is being punished does not exist), are standardly sought either by applying for habeas corpus or, in the case of a federal prisoner, by moving for relief under section 2255. If, the section 2255 route being barred to Nichols by the Antiterrorism Act, section 2241 remains open to him, he can get all the relief he wants under that section. If it is closed to him—if Congress has forbidden federal prisoners to proceed under 2241 even when 2255 is closed to them—then it would be senseless to suppose that Congress permitted them to pass through the closed door simply by changing the number 2241 to 1651 on their motions. We shall therefore treat Nichols's motion for postconviction relief in the district court as an application for habeas corpus filed under section 2241.

We can deal swiftly with the appellants' argument that the restrictions in the Antiterrorism Act on successive motions under 2255 apply only to motions that are successive to earlier motions filed *after* the Act took effect.

We have held that the Act applies to all motions filed after its effective date, e.g., *Alexander v. United States*, 121 F.3d 312, 314–15 (7th Cir.1997), and cases cited there, unless the movant had reasonably relied on the previous law in holding back a ground presented in the successive motion. *Burris v. Parke*, 95 F.3d 465 (7th Cir.1996) (en banc). The exception is not applicable here. We recognize that the Sixth Circuit has held that the Act does not apply when the first motion was filed before the Act took effect, *In re Hanserd*, 123 F.3d 922, 930–33 (6th Cir.1997), but the contrary view of this circuit, which is also the view of the majority of the other circuits, see, e.g., *Pratt v. United States*, 129 F.3d 54, 58–60 (1st Cir.1997), is by now well established. The Supreme Court will have to resolve the conflict.

■ With the amended section 2255 thus applicable to this case, the appellants confront the bar in that section (a holdover from the pre-amended statute) against a prisoner's seeking habeas corpus if he is authorized to apply for relief under 2255, that is, if he is a federal prisoner. The appellants invoke the exception for cases in which the remedy under that section "is inadequate or ineffective to test the legality of his detention." If it is, the prisoner can seek habeas corpus under 2241. Congress did not change this language when in the Antiterrorism Act it imposed limitations on the filing of successive 2255 motions. The retention of the old language opens the way to the argument that when the new limitations prevent the prisoner from obtaining relief under 2255, his remedy under that section is inadequate and he may turn to 2241. That can't be right; it would nullify the limitations. Yet to hold that a federal prisoner may *never* use 2241 would read out of 2255 the express permission to do so if the remedy created by 2255 is inadequate or ineffective to test the legality of the prisoner's detention—unless it is never inadequate or ineffective, and so let us consider that possibility.

■ Before 2255 was enacted in 1948, federal prisoners, like state prisoners, who wanted to mount a collateral attack on their convictions or sentences had to file a petition for habeas corpus in the district court for the

district in which they were imprisoned. Federal prisons were concentrated in a few districts, and the district judges in these districts were flooded with petitions. The purpose behind the enactment of section 2255 was to change the venue of postconviction proceedings brought by federal prisoners from the district of incarceration to the district in which the prisoner had been sentenced. *United States v. Hayman*, 342 U.S. 205, 212–19, 72 S.Ct. 263, 96 L.Ed. 232 (1952). Because the Constitution forbids the suspension of the writ of habeas corpus except in a situation of rebellion or invasion, U.S. Const. art. I, § 9, cl. 2, outright abolition of habeas corpus for federal prisoners might conceivably have been held to violate the Constitution. Whether for this or other reasons (the legislative history is uninformative), Congress created a safety hatch: if section 2255 proved in a particular case not to be an adequate substitute for habeas corpus, the prisoner could seek habeas corpus. This would block any argument that Congress was suspending the writ.

This background, scanty as it is, may explain why Congress in enacting the Antiterrorism Act retained the safety hatch. (Again, there is no helpful legislative history.) If in a particular case section 2255 as amended by the Act does not provide an adequate substitute for habeas corpus, the prisoner can seek habeas corpus, and so he cannot complain that the limitations in 2255 suspended whatever constitutional right he might have had, under the suspension clause or conceivably under the due process clause, to be allowed to seek habeas corpus.

 To decide what "adequacy" means (or, more realistically, what it should mean) in this context requires determining what the essential function of habeas corpus is and whether it is impaired in the circumstances before us by the limitations on the use of the remedy provided in section 2255. The essential function is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence. *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Price v. Johnston*, 334 U.S. 266, 283, 68 S.Ct. 1049, 92 L.Ed. 1356

(1948). Davenport and Nichols argue that they were sentenced (Davenport as an armed career criminal, Nichols for using a firearm in a drug offense) for a status (in the case of Davenport) or behavior (in Nichols's case) that were not made criminal by the statutes under which they were convicted and sentenced. These arguments go to the fundamental legality of their sentences, *Davis v. United States*, 417 U.S. 333, 346–47, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); see also *Corcoran v. Sullivan*, 112 F.3d 836, 838 (7th Cir. 1997); *Johnson v. United States*, 805 F.2d 1284, 1288 (7th Cir.1986); *United States v. Gobert*, 139 F.3d 436, 438 (5th Cir.1998), but in the case of Davenport allowing him to seek habeas corpus is not needed to give him a reasonable opportunity to obtain a reliable judicial determination of that legality. He had a chance to raise the question about the 1981 burglary conviction when he appealed from his conviction for being a felon in possession and later when he filed a section 2255 motion challenging the conviction. Nothing in section 2255, including limitations on successive motions that obviously were not applicable to his first motion—because it *was* a first motion and also because it was filed before the Antiterrorism Act was passed—prevented Davenport from obtaining relief against being imprisoned for a crime that he had not committed. Nothing in 2255 made the remedy provided by that section inadequate to enable Davenport to test the legality of his imprisonment. He had an unobstructed procedural shot at getting his sentence vacated.

He complains that if he is indeed innocent of the "armed career criminal" offense, it is atrocious that he should have no remedy against languishing in prison except for an appeal, which is quite likely to be futile, to executive clemency. But if this complaint were to be accepted, it would make an arbitrary hole in the Antiterrorism Act. Davenport is attacking his sentence rather than his conviction, for the armed career criminal act is a sentence-enhancement statute; he is "innocent" (if his claim has merit) only in a technical sense. For him to be able to file successive motions for postconviction relief, but not someone who had been denied all right to counsel or had a confession beaten

out of him but was unable to argue that he had in fact been innocent of the crimes of which he had been convicted, would correspond to no intelligible concept of either legal or substantive justice. And the privileged status for which Davenport contends would if accepted allow him to file not just one successive appeal; a prisoner who was claiming to be innocent could by the logic of Davenport's argument file an indefinite number of successive motions for postconviction relief—could indeed file an identical new motion every day of his incarceration.

Davenport pretends to concede that the old "abuse of the writ" defense would be available to check the flood. See, e.g., *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Sanders v. United States,* 373 U.S. 1, 8–10, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *Burris v. Parke, supra,* 95 F.3d at 469. He cannot be serious about this. It is inconsistent with his claim that an innocent person *must* be allowed to seek relief under section 2241, so unthinkable is it that such a person should be without remedy, however careless he or his lawyers may have been in failing to follow the remedial path that the law has mapped out for him. Society, however, is unwilling to expend indefinitely large judicial resources on repeated testing of the accuracy of a determination of guilt. The amended section 2255 gives a convicted defendant only one further bite at the apple after his direct appeal unless he can demonstrate a compelling reason, as defined in the section (newly discovered evidence of innocence or a new and retroactive rule of constitutional law), for being allowed a third bite (the first being the direct appeal, the second the first postconviction proceeding). We do not think it plausible that the Constitution requires more, in which event there would be an argument for construing the escape hatch more broadly in order to preserve the constitutionality of section 2255.

Nichols's case is unlike Davenport's. Nichols had no reasonable opportunity, either when he was convicted and appealed or later when he filed a motion for postconviction relief under section 2255, to challenge the legality of his conviction for using a firearm in connection with a drug offense on the ground that "use" does not include merely possessing. The law of the circuit was so firmly against him that we have held that in that period defendants in this circuit did not have to raise a *Bailey* issue in order to preserve it as a basis for collateral attack later on, when the Supreme Court overruled our decisions. *Woodruff v. United States,* 131 F.3d 1238, 1242 (7th Cir.1997); *Stanback v. United States,* 113 F.3d 651, 654–56 and n. 2 (7th Cir.1997). It would just clog the judicial pipes to require defendants, on pain of forfeiting all right to benefit from future changes in the law, to include challenges to settled law in their briefs on appeal and in postconviction filings.

The question is whether in these circumstances, which as we said differ markedly from those of Davenport's case, the remedy created by section 2255 can be thought adequate to enable the prisoner to test the legality of his detention. Here, in agreement with the Third Circuit's decision in *In re Dorsainvil,* 119 F.3d 245, 251 (3d Cir.1997), we think the answer is no. Nichols could not use a first motion under the section to obtain relief on a basis not yet established by law. He could not use a second or other successive motion to obtain that relief because the basis on which he seeks relief is neither newly discovered evidence nor a new rule of constitutional law. *Nuñez v. United States,* 96 F.3d 990, 992 (7th Cir.1996). It is true that his claim would wash out if the Supreme Court had made the statutory definition that it adopted in *Bailey* applicable only to future cases, for then Nichols would not have been convicted for a nonexistent crime; but the Court, consistent with its usual practice, see, e.g., *Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 96–97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), did not do this, *Bousley v. United States,* —— U.S. ——, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Woodruff v. United States, supra,* 131 F.3d at 1242, and so he has a claim that he is indeed being held in prison for a nonexistent crime. It is a claim that he could at no time present in a motion under section 2255, nor earlier in his direct appeal.

■ A procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense. It could indeed, though this we need not decide, be thought an inadequacy of constitutional dimensions. Granted, it was not until long after the Bill of Rights was adopted that federal criminal defendants had either a right of appeal or a right to challenge their convictions via habeas corpus. See, e.g., *McKane v. Durston*, 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867 (1894); *Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 202–03, 7 L.Ed. 650 (1830). These rights were conferred by statute, and it is an open question whether a right to a meaningful opportunity to correct judicial errors by means of appellate or collateral attacks on a criminal judgment is conferred by the due process clause as that clause is understood today. And true, there is a difference between being unable to challenge an error that the law recognized as such when one was tried and not being allowed to take advantage of a change in the law after one was convicted. That difference is fundamental to the Supreme Court's modern law of habeas corpus. See, e.g., *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). But *Bailey* did not *change* the law under which Nichols was convicted, as in cases where the Supreme Court overrules one of its previous statutory decisions; *Bailey* resolved an open question; so mere possessors convicted before *Bailey* of use really were convicted of a nonexistent crime, although this was not widely known at the time. On this basis, *Woodruff* and *Stanback* held that *Teague* does not prevent prisoners convicted before *Bailey* was decided from using that decision to attack their conviction collaterally, and the Supreme Court has now upheld our position. "[*Teague*] is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." *Bousley v. United States, supra,* —— U.S. at ——, 118 S.Ct. at 1610.

Thus, if the government's position is correct, Nichols never had a reasonable chance to correct an error that is corrigible retroactively. The trial judge, bound by our pre-*Bailey* cases, would not listen to him; *stare decisis* would make us unwilling (in all likelihood) to listen to him; and the Supreme Court does not view itself as being in the business of correcting errors, and declined to correct the particular error that infected Nichols's conviction until after he had exhausted his appellate remedies. Until the direct-appeal phase of the criminal proceeding against Nichols was over, he had no way to compel *any* judge to listen to an argument later proved sound *and* retroactive *and* cognizable in postconviction proceedings that the use of a firearm does not include bare possession. If there is a constitutional entitlement to a reasonable procedure for correcting fundamental legal errors in the criminal process, then section 2255 interpreted as narrowly as the government would have us do has denied Nichols that entitlement.

But as we said, we don't have to decide any constitutional issue. Even if the purpose of the "adequacy" escape hatch in section 2255 was and is to preserve whatever constitutional right there may be to habeas corpus, the escape hatch is not worded so narrowly. Nor would it meet the needs of practical judicial enforcement to hold, as the Second Circuit did in *Triestman v. United States*, 124 F.3d 361, 377–79 (2d Cir.1997) (contrary to *Dorsainvil,* as we read that opinion), that a federal prisoner can seek habeas corpus if and only if not letting him do so would raise a serious constitutional question. That is too indefinite. A federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion.

We add three qualifications, the first two obvious and the third less so. The first is that the change of law has to have been made retroactive by the Supreme Court, as the Court has now done for *Bailey* errors by its *Bousley* decision. The second is that it must be a change that eludes the permission in section 2255 for successive motions; if it does not, if therefore the prisoner is not barred from filing a successive such motion, then his 2255 remedy is not inadequate and he cannot

apply for habeas corpus. Third, "change in law" is not to be equated to a difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated, *Cain v. Markley*, 347 F.2d 408, 410 (7th Cir.1965), the first being the venue for his 2255 motions and the second his venue for his habeas corpus application. When there is a circuit split, there is no presumption that the law in the circuit that favors the prisoner is correct, and hence there is no basis for supposing him unjustly convicted merely because he happens to have been convicted in the other circuit.

None of these qualifications pertains to Nichols's case, and so we reverse the dismissal of his application for relief in the district court (an application that, recall, we have reclassified from 28 U.S.C. § 1651 to section 2241 and from a petition for leave to file in the district court to an appeal to this court), while affirming the dismissal of Davenport's application.