MARTIN, Circuit Judge,
dissenting, in which BARKETT and HILL, Circuit Judges, join:
Ezell Gilbert is now before us asking to be relieved of the consequences of a mistake we made in his direct appeal in 1998. He told us then that the District Court was wrong in sentencing him substantially more harshly based on that court’s decision that carrying a concealed weapon is a crime of violence. We rejected his argument, and affirmed his sentence of more than 24 years. United States v. Gilbert, 138 F.3d 1371 (11th Cir.1998). We did this on a record containing the District Judge’s clear statement that the sentence was longer than he would have imposed, but for the then-mandatory Sentencing Guidelines. Id. at 1372-73. It turns out, of course, that Mr. Gilbert was right and we were wrong. Carrying a concealed weapon is not a crime of violence. We said so, belatedly for Mr. Gilbert, in United States v. Archer, 531 F.3d 1347 (11th Cir.2008).
The effects of our mistake are quite dire for Mr. Gilbert, insofar as his properly calculated (and advisory) guideline range would today be 130-162 months, or approximately 11 to 13 years. As I write this, I understand that he has already served more than fourteen years in prison. And yet the majority opinion tells Mr. Gilbert that the laws and Constitution of this country offer him no relief. I differ with the majority insofar as I believe the statute offers Mr. Gilbert a remedy under these extraordinary circumstances. If, on the other hand, I must accept the majority position that Mr. Gilbert has no statutory remedy, I say that he has been subjected to a deprivation of liberty of such magni *1331 tude that, when paired with no possible remedy, we are confronted with a constitutional question that we otherwise need not have reached. That constitutional question is whether the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), as interpreted by the majority, constitutes a suspension of the writ in violation of Article I, § 9, cl. 2 of the United States Constitution.[1] See Boumediene v. Bush, 553 U.S. 723, 779, 128 S.Ct. 2229, 2266, 171 L.Ed.2d 41 (2008) (recognizing that it is “uncontroversial ... that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to ‘the erroneous application or interpretation’ of relevant law.” (quoting I.N.S. v. St. Cyr, 533 U.S. 289, 302, 121 S.Ct. 2271, 2281, 150 L.Ed.2d 347 (2001))); In re Davenport, 147 F.3d 605 (7th Cir.1998) (recognizing that a “safety hatch” available when “[28 U.S.C. §] 2255 proved in a particular case not to be an adequate substitute for habeas corpus ... would block any argument that Congress was suspending the writ”).
In order to more clearly delineate Mr. Gilbert’s avenue for relief, it is necessary to review the remedies that are not available to him. First, because Mr. Gilbert raised the issue of his career offender enhancement in his direct appeal, and because the Supreme Court had not yet decided Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), he was barred from arguing in his first and timely-filed 28 U.S.C. § 2255 petition that carrying a concealed weapon is not a crime of violence. Our precedent clearly forecloses a habeas court from granting collateral relief on a matter raised on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir.2000) (“[Ojnce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.”) (quotation marks omitted).
Second, 28 U.S.C. § 2255(h), which was enacted into law as a part of AEDPA, and permits a second or successive petition for relief, is not available to Mr. Gilbert. In order to be eligible to file a second or successive motion for relief under § 2255(h), the statute requires a showing either that (1) there is newly discovered evidence which would, under a strict standard of review, result in no reasonable fact finder finding him guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that had not been previously available. We have held that the “newly discovered evidence” requirement of this statute refers to the offense of conviction, so it cannot be relied upon by someone, like Mr. Gilbert, who is challenging his sentence. See, e.g., In re Dean, 341 F.3d 1247, 1249 (11th Cir.2003). Also, Begay, 553 U.S. 137, 128 S.Ct. 1581, in which the Supreme Court abrogated our ruling in Mr. Gilbert’s direct appeal, Archer, 531 F.3d 1347, dealt with a sentencing issue, and therefore has not been deemed to pronounce a new rule of constitutional law under § 2255(h). This means that Mr. Gilbert, who was never a career offender in light of Begay’s retroactive application, has no remedy under § 2255(h) even though he will be incarcerated for just short of a quarter century based on a mistaken determination that he was a career offender.
For me, Mr. Gilbert’s particular circumstance is addressed by 28 U.S.C. § 2255(e), which was already in existence at the time of AEDPA’s passage, and not expressly *1332 repealed by it. It is often referred to as the “savings clause” of section 2255, and provides as follows:
An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.
Mr. Gilbert did not fail to apply for relief, but rather has diligently pursued every legal avenue available to him, including, of course, direct appeal to this Court. Since Mr. Gilbert still faces a sentence of more than 24 years despite our admission that we decided his case wrongly, his efforts can only be said to have been of no effect. Therefore, proceeding under the plain terms of the statute, as we must, § 2255 has been both inadequate and ineffective for Mr. Gilbert. See Connecticut Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (“[CJourts must presume that a legislature says in a statute what it means and means in a statute what it says.”) Under the statute, therefore, Mr. Gilbert may turn to 28 U.S.C. § 2241.
Shortly after Mr. Gilbert was convicted, we mentioned the possibility that relief for a “fundamental defect” in a sentence might be available by way of this savings clause. Wofford v. Scott, 177 F.3d 1236, 1244-45 (11th Cir.1999). In Wofford, we said “the only sentencing claims that may conceivably be covered by the savings clause are those based upon a retroactively applicable Supreme Court decision overturning circuit precedent.” Id. at 1245. Here, the government has never disputed that the United States Supreme Court’s decision in Begay fits this description of a “retroactively applicable Supreme Court decision overturning circuit precedent.” Indeed the government could not, because the Supreme Court’s ruling in Begay caused us to overturn circuit precedent, applied in Mr. Gilbert’s direct appeal, that carrying a concealed weapon is a crime of violence.
The majority today forecloses the possibility we left open back in 1999. This decision removes any possibility of habeas relief for Mr. Gilbert by equating the requirements for relief under § 2255(e) with those under § 2255(h) and, in the process, renders the savings clause a dead letter. So now it is true that there is no relief in Alabama, Florida or Georgia for any person who is, for some reason, barred from relief under § 2255 but wrongfully incarcerated on account of a sentencing error. This is so, even here, where that sentencing error leaves him incarcerated for a decade or more beyond what is called for by law.[2]
*1333 Requiring a prisoner to meet the requirements of 28 U.S.C. § 2255(h) in order to be eligible for relief under § 2255(e) (and therefore 28 U.S.C. § 2241) raises long recognized constitutional concerns. The writ of habeas corpus is now, and has been since the beginning, fundamental to our system of justice. We know that the “[pjower to issue the writ of habeas corpus, the most celebrated writ in the English law, was granted to the federal courts in the Judiciary Act of 1789.” United States v. Hayman, 342 U.S. 205, 210, 72 S.Ct. 263, 268, 96 L.Ed. 232 (1952) (quotation marks and citations omitted). In Hayman, the United States Supreme Court reviewed the reasons for passage of 28 U.S.C. § 2255 and evaluated the then new statute as well. Id. at 210-22, 72 S.Ct. at 268-74. The Court recognized the role of 28 U.S.C. § 2241 for those cases in which § 2255 cannot provide relief, stating “[i]n a case where the Section 2255 procedure is shown to be ‘inadequate or ineffective,’ the Section provides that the habeas corpus remedy [§ 2241] shall remain open to afford the necessary hearing.” Id. at 223, 72 S.Ct. at 274.
While the Hayman court was addressing § 2255 well before the enactment of the AEDPA amendments, I am aware of no development in the decades that have passed since the ruling in Hayman, including the passage of AEDPA, that was intended to remove the power and responsibility of the judiciary to enforce § 2241. Our duty to interpret that provision according to its plain terms is especially robust in light of the Suspension Clause of the U.S. Constitution. By today’s decision we have shirked our duty in that regard, and in doing so we diminish the institution of the federal courts.
As if to highlight the harm we do to the court, during oral argument the government stated that the only possible avenue of recourse for Mr. Gilbert is to seek clemency from the Executive Branch of government. Surely we neglect our responsibility when we turn away a wrongfully incarcerated defendant with the suggestion that he seek relief from the branch already charged with the vast responsibility of exercising executive powers. The responsibility for assuring individual justice is ours.
The plain text of § 2255(e) permits Mr. Gilbert to petition for habeas corpus through a § 2241 motion. My application of the majority’s own analysis leads to this conclusion as well.
a. Statutory Construction
In construing the enactment of 28 U.S.C. § 2255(h) to deplete the importance of the previously existing § 2255(e) the majority says: “[fjundamental canons of statutory construction support the conclusion that the generally worded and ambiguous savings clause, which was first enacted in 1947, cannot override the specifically worded and clear statutory bar on second or successive motions that was enacted as part of AEDPA in 1996.” Maj. • Op. at 1308. This ignores another fundamental canon of statutory construction, recognized by the Supreme Court in the very case relied upon by the majority, which disfavors repeal of a statute by implication. Morton v. Mancari, 417 U.S. 535, 549-50, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974); see Maj. Op. at 1311. Indeed, the Supreme Court has expressly declined to find that certain AEDPA amendments repealed 28 U.S.C. § 2241 by implication. Felker v. Turpin, 518 U.S. 651, 661, 116 S.Ct. 2333, *1334 2339, 135 L.Ed.2d 827 (1996). And yet, the majority effectively comes to that result here. By grafting the requirements of § 2255(h) onto the savings clause, the majority has stripped that clause of any independent meaning. Such a result flies in the face of Congress’s deliberate choice to leave the savings clause intact when passing AEDPA.
b. Finality
In this case of statutory construction, the majority also speaks of the importance of finality. Surely Mr. Gilbert’s case is a poor vehicle to promote the idea that finality builds confidence in our criminal justice system. Today we tell a man he must sit in the penitentiary for years beyond the sentence that a proper application of the law would have imposed, when we rejected his correct interpretation of what the law meant back in 1998.
Finality is valued in our system insofar as it promotes certain principles: (1) to build confidence in the integrity of the judicial system; (2) to minimize administrative costs and delay; (3) to avoid spoilatión of evidence; and (4) to honor comity. See United States v. Addonizio, 442 U.S. 178, 184 n. 11, 99 S.Ct. 2235, 2240 n. 11, 60 L.Ed.2d 805 (1979); see also Paul M. Ba-tor, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L.Rev. 441, 451-53 (1962). We advance none of these principles by denying Mr. Gilbert relief here.
First, denying relief does not build confidence in our court system because this looks to the world like a court refusing to acknowledge or make amends for its own mistake. Second, to the extent that there have been administrative costs and delay in considering Mr. Gilbert’s request for relief, they have already been incurred, and we need only grant him that relief to end his very expensive incarceration. Third, because the only issue before us is a purely legal one, there is no evidence we must consult. Thus spoliation is not a concern. And finally, Mr. Gilbert’s case presents no comity concerns insofar as he seeks to correct a sentence imposed in federal court and not by the state.
It is worth pausing briefly to properly emphasize that this case does not raise comity concerns because we are asked to correct a mistake we ourselves made in federal court. We are not reviewing a state court conviction which would require our deference. To be sure, AEDPA was designed “to further the principles of comity, finality, and federalism.” Williams v. Taylor, 529 U.S. 420, 436, 120 S.Ct. 1479, 1491, 146 L.Ed.2d 435 (2000); accord Miller-El v. Cockrell, 537 U.S. 322, 337, 123 S.Ct. 1029, 1040, 154 L.Ed.2d 931 (2003). As the Supreme Court has recognized, however, finality is most important when federal courts are reviewing state court as opposed to federal court convictions:
Finality has special importance in the context of a federal attack on a state conviction. Reexamination of state convictions on federal habeas frustrated] ... both the States’ sovereign power to punish offenders and their good-faith attempts to honor constitutional rights. Our federal system recognizes the independent power of a State to articulate societal norms through criminal law; but the power of the State to pass laws means little if the State cannot enforce them.
McCleskey v. Zant, 499 U.S. 467, 480, 111 S.Ct. 1454, 1469, 113 L.Ed.2d 517 (1991) (quotation marks and citations omitted). AEDPA codified the previously existing procedures which placed limits on the power of federal courts to grant writs of habeas corpus to state prisoners. Miller-El, 537 U.S. at 337, 123 S.Ct. at 1039-40; Williams v. Taylor, 529 U.S. 362, 380 n. 11, 120 S.Ct. 1495, 1506 n. 11, 146 L.Ed.2d *1335 389 (2000). Giving life to this limit on federal courts where state convictions are concerned, the abuse of the writ doctrine was codified in 28 U.S.C. § 2254, which governs those in custody “pursuant to the judgment of a State Court.” See Williams, 529 U.S. at 380 n. 11, 120 S.Ct. at 1495 n. 11 (discussing codification of “abuse of the writ doctrine applied in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)”).[3] Because we do not address a state court conviction here, this court sits at the apex of its power to free Mr. Gilbert from his unlawful detention, and yet we have declined to do so.
c. Jurisprudence from Other Circuits
The majority states categorically that every other circuit court has refused to interpret the savings clause (28 U.S.C. § 2255(e)) “in a way that would drop the § 2255(h) bar on second and successive motions.” Maj. Op. at 1308. Such a definitive statement is not accurate for two reasons. First, the Second and Seventh Circuits have left the question open. Second, no other court has addressed this legal question in the context of facts which carry the magnitude of the impact this case has on Mr. Gilbert. I do agree with the majority that the Third, Fifth and Sixth Circuits have either denied the relief which Mr. Gilbert seeks here, or at least strongly indicated that such relief is not available. For that reason, I will elaborate only on the opinions from the Second and Seventh Circuits.
In Triestman v. United States, 124 F.3d 361 (2d Cir.1997), that court did wade into the meaning of the “inadequate or ineffecfive” language of 28 U.S.C. § 2255(e). The court said:
We have already stated that “inadequate or ineffective” is not limited merely to the practical considerations suggested by the government, but refers to something that is still less than the full set of cases in which § 2255 is either unavailable or unsuccessful. We now hold that that “something” is, at the least, the set of cases in which the petitioner cannot, for whatever reason, utilize § 2255, and in which the failure to allow for collateral review would raise serious constitutional questions.
Id. at 377. In contrast to the majority’s reading of this case, I do not read it to foreclose relief to Mr. Gilbert. Surely it must be true that keeping someone in the penitentiary for such a substantial duration beyond what the correct sentence would call for constitutes a “serious constitutional question.”
I also see the Seventh Circuit’s opinion in Davenport, 147 F.3d 605, as favorable to Mr. Gilbert. The majority characterizes Davenport as rejecting the argument that a defendant may assert a § 2241 claim when the procedural hurdles of § 2255 bar a second or successive motion. Maj. Op. at 1308, 1313-15. I agree with this characterization, as far as it goes. But the Davenport court said more. The court concluded that “[a] federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion.” Id. at 611 (emphasis added). Because Mr. Gilbert has never had a “rea *1336 sonable opportunity” to obtain a judicial correction of such a fundamental defect, it may well be that he would prevail in the Seventh Circuit. At the very least, I do not think it accurate to say the possibility for relief has been foreclosed to Mr. Gilbert, or someone similarly situated, whose case arose in the Seventh Circuit.
While we may be enriched by the consideration our sister circuits have given to the substantial legal issues we consider here, the decision in Mr. Gilbert’s case is ours. For the reasons set out above, I see no impediment imposed by statute or legal precedent which prevents this court from correcting the mistake we made in Mr. Gilbert’s case so long ago. To the contrary, I see it as our duty to do so.
Finally, I do not share the majority’s concern that giving Mr. Gilbert relief under these extraordinary circumstances will open the floodgates to other prisoners. Indeed if there are others who are wrongfully detained without a remedy, we should devote the time and incur the expense to hear their cases. What is the role of the courts, if not this? But what is important today is the consequence to Mr. Gilbert of our unwillingness to correct our past legal error.
For these reasons I respectfully dissent. I would vacate Mr. Gilbert’s sentence and remand his case to the District Court so that he can be resentenced with the law correctly applied.

. The commonly referred to Suspension Clause of the U.S. Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.” U.S. Const. art. I, § 9, cl. 2.

. I recognize that my estimate of the difference between Mr. Gilbert’s current sentence, and what his sentence would be if he were sentenced today makes the generous assumption that the District Judge would again impose a sentence at the low end of the guidelines. My estimate comes from subtracting the number of months which constitute the low end of what we now know to be Mr. Gilbert’s correct guideline range from the sentence he is serving. The majority's estimate is much higher. The majority speculates that Mr. Gilbert could be resentenced to 292 months of incarceration or could get an even longer sentence. In order to get to this number the majority has second guessed the charging decisions made by the prosecutor with regard to Mr. Gilbert. This is not permitted by our precedent. United States v. Smith, 231 F.3d 800, 807 (11th Cir.2000) ("The decision as to which crimes and criminals to prosecute is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced.”). Although the answer to the question of how long Mr. Gilbert’s sentence *1333 would be if he were resentenced has some bearing on the extent of the deprivation for which he is here seeking relief, we can all agree that Mr. Gilbert has already been incarcerated for a period well beyond the top of today’s accurate guideline range for the charge of which he was convicted in this case.

. As the Supreme Court explained in Pelker, the “abuse of the writ” doctrine constitutes "a modified res judicata rule.” 518 U.S. at 664, 116 S.Ct. at 2340. But abuse of the writ principles do not properly come into play here, because Mr. Gilbert has not abused the writ. To the contrary, he has never once had "a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law.” Boumediene, 553 U.S. at 779, 128 S.Ct. at 2266.