EASTERBROOK, Circuit Judge,
with whom BAUER, KANNE, SYKES, and TINDER, Circuit Judges, join,
dissenting.
Bruce Webster led a group that perpetrated a horrific kidnapping and murder. The opinion affirming his conviction and death sentence provides details. United States v. Webster, 162 F.3d 308 (5th Cir.1998). See also United States v. Webster, 392 F.3d 787 (5th Cir.2004) (denying a motion to expand the issues reviewable on appeal under 28 U.S.C. § 2255); United States v. Webster, 421 F.3d 308 (5th Cir. 2005) (affirming a decision denying relief under § 2255); In re Webster, 605 F.3d 256 (5th Cir.2010) (denying application for *1147 permission to pursue a second collateral attack).
I
Although Webster’s guilt, and the appropriateness of capital punishment for his crime, are undisputed, “[a] sentence of death shall not be carried out upon a person who is mentally retarded. A sentence of death shall not be carried out upon a person who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person.” 18 U.S.C. § 3596(c). That statute was in effect when Webster was tried and sentenced. The Supreme Court later held that the Constitution establishes the same rule, see Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); Hall v. Florida, - U.S. -, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014), but these decisions are no more favorable to Webster than the statute, so the controlling law is unchanged.
■Whether Webster is “retarded” was the principal issue at his trial and sentencing. He raised his mental shortcomings as a mitigating factor, and four jurors found that they mitigate his culpability, but the jury still voted unanimously for capital punishment. The sentencing hearing spanned 29 days, with abundant evidence. The district judge found that Webster is not retarded within the meaning of § 3596(c) and sentenced him to death. The Fifth Circuit affirmed on the merits and later affirmed a district court’s decision denying a petition under § 2255 addressed to retardation. If Webster is retarded, he is ineligible for the death penalty. Whether he is retarded has been determined after a hearing, collateral review under § 2255, and multiple appeals. What Webster now wants is still another opportunity to litigate that question. The majority gives Webster that opportunity in a new district court and a new circuit, setting up a conflict among federal judges. Section 2255 is designed to prevent that, and prudential considerations also militate against one circuit’s disagreeing with another in the same case. See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).
According to my colleagues, 28 U.S.C. § 2241, the general habeas-corpus statute, entitles Webster to a new hearing despite the fact that his mental condition has been adjudicated already. Until 1948, when Congress enacted § 2255, litigation under § 2241 would have been permissible, provided it was not an abuse of the writ. (That Webster’s new lawyers rely on new evidence means that this proceeding would not have been classified as' an abuse of the writ under pre-1996 law. See McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).) But § 2241 cases proceed where the prisoner is confined, see Rumsfeld v. Padilla, 542 U.S. 426, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004), which creates a risk of inconsistent outcomes as well as a high probability of litigation in multiple courts (most federal prisoners are confined outside the sentencing district). That’s why Congress enacted § 2255, whose principal function is to put all post-conviction litigation in the district court that tried the case, which not only matches the litigation to the court possessing the record but also ensures that only one court of appeals will be involved. See United States v. Hayman, 342 U.S. 205, 214-19, 72 S.Ct. 263, 96 L.Ed. 232 (1952); John J. Parker, Limiting the Abuse of Habeas Corpus, 8 F.R.D. 171 (1949). (Judge Parker chaired the committee that drafted the proposal enacted as § 2255.) A principal goal of the 1948 enactment was to prevent exactly what the majority today author *1148 izes: “the unseemly spectacle of federal district courts trying the regularity of proceedings had in courts of coordinate jurisdiction”. Parker, 8 F.R.D. at 172-73. See also Alexander Holtzoff, Collateral Review of Convictions in Federal Courts, 25 B.U.L.Rev. 26, 55 (1945).
As part of the new approach, Congress enacted language now codified at § 2255(e): “An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.”
When is § 2255 “inadequate or ineffective to test the legality” of a sentence? The majority concludes that § 2255 is “inadequate or ineffective” because it does not allow Webster to present the particular argument he now wants to make. After discovering three mental evaluations in the Social Security Administration’s files, Webster asked the Fifth Circuit for permission' to mount another collateral attack. It said no, because § 2255(h), which was enacted in 1996 as part of the Antiterrorism and Effective Death Penalty Act (AEDPA), limits to one the number of collateral attacks a prisoner may present, unless conditions in 28 U.S.C. § 2244 and § 2255(h) can be satisfied.
The Fifth Circuit concluded that the statutory conditions have not been satisfied. Substantive law has not changed, so § 2255(h)(2) does not authorize another proceeding, and the three reports are similar in nature to other evidence presented at the hearing, which means that they do not “establish by clear and convincing evidence that no reasonable fact-finder would have found” Webster death-eligible.[1] Reasonable judges could disagree about what effect the three reports might have had— though even Judge Wiener, whose concurring opinion expressed reservations, thought the court’s application of § 2255(h)(1) correct — but it does not matter whether the Fifth Circuit is right, because § 2244(b)(3)(E) provides that “[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.”' That can’t be avoided by asking a different circuit to revisit the issue.
The majority in this circuit concludes that because the Fifth Circuit held that the statutory conditions for another review un *1149 der § 2255 are unmet, § 2255 is “inadequate or ineffective” and Webster can proceed under § 2241. If this is so, then the 1996 amendments have undone the basic structure established in 1948 and allowed successive litigation all over the country. Instead of reducing the number of post-conviction proceedings, as Congress set out to do, the 1996 changes have opened the door to any proceedings that do not abuse the writ — the pre-1996 standard. See Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). Webster’s lawyer was explicit about this at argument before the panel, even though one principal goal of the 1996 amendments was to replace Sanders with a closed list of conditions that allow further collateral review. At the argument en banc, Webster’s lawyer contended that new proceedings under § 2241 are permissible whenever “law and justice require.” That language comes from 28 U.S.C. § 2243 ¶ 8 and has nothing to do with the number and location of allowable collateral attacks; instead it tells courts how to proceed when crafting relief after a petitioner has prevailed on the merits.
My colleagues deny that they are going so far, but that’s what their decision means. They stress the particulars of Webster’s situation, which are unusual, but every case is unique in its own way. We must begin not with facts but with law. The statutory rule is that a successive collateral attack is permissible only when the conditions of § 2255(h) are met. By using § 2255(e) to authorize more collateral review because those conditions are not met, the majority has reversed the legislative decision of 1996 — -indeed has made things worse and reversed the legislative decision of 1948, because until 1996 a successive collateral attack would have been in the original district court and circuit, see Sanders, while after today’s decision the successive collateral attack will be in a different district court and circuit.
The reason Webster, in particular, can’t meet § 2255(h) should not matter; the next petitioner will have a different, case-specific reason why § 2255(h) does not allow another petition, and under the majority’s logic that prisoner too can resort to § 2241. Consider: My colleagues say that Webster’s case is especially strong because the evidence he now wants to present existed before his trial and sentencing (op. 1140-41). But wouldn’t his claim be even stronger if the evidence about his mental condition post-dated the sentencing? New evidence of a changed condition better justifies a new hearing than old evidence of an unchanged condition — for a condition that predated the trial could have been litigated at trial and through a § 2255 petition filed within a year, while a change of mental condition could not have been litigated earlier. And a new argument based on newly created evidence of an unchanged condition (for example, a new test and analysis by an independent expert) also would be stronger, for by definition it could not have been presented at trial no matter how good the accused’s lawyer.
Using the majority’s template, any creative judge can find a reason for turning to § 2241 whenever a court of appeals decides that § 2255(h) blocks a successive motion under that statute. And because the only federal prison holding prisoners under sentence of death is in Indiana, this circuit is effectively claiming the final say about the propriety of every federal death sentence. Section 2255 was enacted in 1948 in part to prevent the district court in which prisoners are held from reviewing the decisions of the district court and circuit where the prosecution occurred. Parker, Limiting the Abuse of Habeas Corpus, 8 F.R.D. at 172-73. Today’s decision *1150 reverts the law of collateral review to the multi-jurisdictional mess that § 2255 was designed to eliminate.
Treating the 1996 limits on second or. successive proceedings as making § 2255 inadequate, and thus authorizing proceedings under § 2241, is a path this court has been pursuing since In re Davenport, 147 F.3d 605 (7th Cir.1998). See also, e.g., Garza v. Lappin, 253 F.3d 918 (7th Cir. 2001); Brown v. Caraway, 719 F.3d 583 (7th Cir.2013). Today’s decision extends those cases from changes of law to newly discovered evidence — in other words, from § 2255(h)(2) to § 2255(h)(1), treating both parts of § 2255(h) as making § 2255 as a whole inadequate or ineffective. Webster’s case has attributes that the majority emphasizes (op. 1140-41 n. 9), but as an extension of Davenport, Garza, and Brown the opinion cannot be treated as a ticket good for Webster’s train only.
Davenport and its successors discuss circumstances that may justify a federal prisoner’s use of § 2241 to test the validity of his conviction or sentence. These decisions hold that when a change of law, retroactively applicable, shows that the prisoner did not commit a crime or has received an illegally high sentence, § 2241 is available if it otherwise would be impossible to implement the Supreme Court’s intervening ruling. Congress did not appear to contemplate the possibility of retroactive statutory decisions that show a prisoner’s innocence (§ 2255(h)(2) being limited to new rules of constitutional law). That’s what Davenport treats as justification for invoking § 2241.
Davenport and its successors conclude that § 2241 is available to provide the full retroactive effect contemplated by the Supreme Court. But Webster is not the beneficiary of a retroactive decision that cannot be implemented except through § 2241. Section 3596(c) predates his crime and trial; its rules remain in force. Nor does Webster contend that his mental condition has changed. Instead he wants to use § 2241 to make a better factual record and to place his arguments before a different circuit, hoping for a better result. These desires, understandable as they are, do not call into question the adequacy or effectiveness of § 2255:' ■
What the majority calls a textual analysis (op. 1138-39) relies not on the text of § 2255(e) but on the text of § 2255(a), which says that § 2255 as a whole covers sentences as well as convictions. Yet how can this justify using § 2255(e) to escape from § 2255 altogether? Section 2255(a) is why Webster was able to use § 2255 to make (to the district court in Texas and the Fifth Circuit) an argument that he is ineligible for capital punishment. That he made such an argument, and had it resolved on the merits, cannot show that § 2255 is inadequate or ineffective; it shows, to the contrary, that the statute is comprehensive. The majority’s position would be stronger if § 2255(a) excluded attacks on sentences; then a prisoner would indeed need to use § 2241 to pursue effective collateral review. But that’s not how § 2255 works.
The majority repeatedly invokes Atkins and Hall but does not explain why they justify a successive collateral attack. Webster does not contend that they enlarge the set of persons ineligible for capital punishment, so it is hard to see why the majority states, op. 1138-39 & n. 6, that they make a difference for the purpose of § 2255(e). True, the Supreme Court has held that the rule of § 3596(c) is part of the Constitution as well as the United States Code. But Atkins and Hall do not alter the substantive standard. Section 2255 enforces statutes as well as the Constitution. See Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 *1151 (1974). That’s why Webster could, and did, obtain review of his ineligibility argument under § 2255. There’s no basis for another round of collateral review when the substantive rule is unchanged. How can § 2255 be “inadequate or ineffective” to present a line of argument that Webster actually presented, and on which he received a decision on the merits?
What is more, the evidence that Webster wants to introduce cannot helpfully be called “newly discovered.” Webster has long known of it. It concerns his own application for Social Security disability benefits. He knew about that application; he knew that his mental condition had been tested as part of that application; his lawyer at trial knew these things too (as did his mother, who mentioned the subject during her testimony); and it would have been possible to retrieve the records in time for use during the trial and § 2255 proceeding.
Webster’s current legal team asserts that his former lawyer was stonewalled when trying to obtain these records, but that is not what the former lawyer himself said. He related that he asked the Social Security Administration for Webster’s records but lacks any memory of a response and therefore assumes that he must have been denied access. Yet that assumption is unfounded. Former counsel did not produce his file (he says that he no longer has it) and therefore did not have any records about the request (if any) and response (if any); he has only a lack of recollection to go on. That’s pretty weak. One sensible inference would be that former counsel, or an investigator on his behalf, simply did not follow through. Current counsel obtained the records less than four months after asking, even though the disability case is an old one and many records had been sent to long-term storage. None of the difficulties (if there were any) that original counsel encountered can be blamed on § 2255.
Nor would the Social Security records facilitate a new line of defense. Webster’s trial counsel had, and introduced, other medical records in which physicians diagnosed retardation before the murder. These records enabled him to ask the jury to infer that he had not started trying to deceive examiners after the prosecution began. The prosecutor could and did reply that there were reasons other than a desire to avoid the death penalty why Webster had done poorly on some IQ tests. Trying to obtain disability benefits would have been one such reason, so the evidence that current counsel now wants to use could have been subject to much the same response as the prosecutor made to the records introduced at sentencing.
But we need not decide what effect the SSA records might have had in the hands of a top-notch lawyer; it is enough to conclude that the to-and-fro between the government and Webster’s current legal team does not hint at a structural problem in § 2255. The problem, if any, lies in how Webster’s former legal team searched for evidence — yet no one contends that § 2255 is inadequate to resolve a claim of ineffective assistance, or for that matter a claim that material evidence has been withheld in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Courts hear and resolve those contentions under § 2255 daily. Webster can’t make § 2255 ineffective by recasting an ineffective-assistance or Brady claim as one about the sufficiency of the evidence. That trial counsel had not obtained whatever records the SSA held was known in time to present an ineffective-assistance or Brady claim during the one § 2255 proceeding allowed as of right.
*1152 II
Instead of extending Davenport, we should reexamine its premises. Davenport treats § 2255 as inadequate only because § 2255(h) blocks multiple rounds of post-judgment litigation. Davenport thought that a prisoner should be entitled to one round of litigation per issue, and if the time-and-number limits enacted in 1996 prevent every issue from having its own opportunity for collateral review after the Supreme Court reinterprets a criminal statute, this demonstrates the statute’s inadequacy. Then Brown allowed resort to § 2241 when the Supreme Court announces a new understanding of the Sentencing Guidelines. Davenport has some support in other circuits;[2] Brown has none;[3] and the majority does not contend that today’s extension of those two decisions to situations in which there has been no change of law has any support elsewhere.
We should step back and ask what function § 2255(e) serves. Is it to ensure an unlimited number of rounds of post-conviction review, as long as each round presents a new question (or new light on an old question), or does it serve a different function? According to the Supreme Court, it serves a different function — a very different function.
When § 2255 was proposed, some people objected that moving all collateral litigation to the sentencing court, and creating some limits on relitigation (even the 1948 version of § 2255 did that, as did the common law discussed in Sanders), would violate the Suspension Clause of the Constitution (Art. I § 9 cl. 2): “The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.” The first time a claim under § 2255 reached the Supreme Court, it was on review from a court of appeals’ decision holding just that. The court of appeals had instructed the district court to ignore § 2255 and proceed under § 2241. But Hayman reversed and directed all federal judges to use § 2255. Along the way, the Court concluded that § 2255 did not pose a serious problem under the Suspension Clause. It also treated the language now found in § 2255(e) as a safety valve: if some application of § 2255 would conflict with the Suspension Clause, a district court could proceed under § 2241 without any need to hold § 2255 unconstitutional. 342 U.S. at 223, 72 S.Ct. 263.
The Supreme Court has never held that § 2255 is “inadequate or ineffective” under any circumstances. Since Hayman it has had only one occasion to discuss § 2255(e). Congress enacted, for litigation in the District of Columbia’s local courts, a provision similar to § 2255(e) that blocked not only use of habeas corpus but also resort to the federal judiciary (other than the Supreme Court of the United States). A prisoner attacked this legislation as a violation of the Suspension Clause because it relegated prisoners to courts staffed by judges who *1153 lack tenure under Article III, and a court of appeals held that a federal court remains entitled to issue writs of habeas corpus under § 2241. As in Hayman, the Supreme Court reversed, sustaining the new procedure for collateral attacks. Swain v. Pressley, 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977). And, as in Hayman, the Justices saw the “inadequate or ineffective” escape hatch as designed to ensure that the remedy does not violate the Constitution. 430 U.S. at 381, 97 S.Ct. 1224.
The question we need to face, therefore, is whether the 1996 amendments to § 2255 violate the Suspension Clause by limiting the circumstances under which successive collateral attacks are proper. That is not a difficult question, because this circuit resolved it almost 20 years ago. After tracing the history of the writ of habeas corpus, we held that the Suspension Clause protects only the “Great Writ”— that is, the writ used to contest pretrial detention by the Executive Branch. Collateral review following conviction by a court of competent jurisdiction did not ex-' ist until the Twentieth Century, and we held that Congress is free to limit the extent to which federal courts can provide post-conviction collateral remedies. Lindh v. Murphy, 96 F.3d 856, 867-68 (7th Cir. 1996) (en banc), reversed on other grounds, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Although Lindh dealt with the 1996 amendments to § 2254 for state prisoners, its reasoning is equally applicable to the 1996 changes to § 2255.
My colleagues in the. majority say that this understanding “essentially reads the savings clause ... out of the statute” (op. 1136). Not at all. It just confines § 2255(e) to its function: saving § 2255 from any potential problem under the Suspension Clause. That it has served its purpose as insurance does not imply that we should give it new work to do. My colleagues do not say that my reading of the origin and scope of § 2255(e) is wrong; instead they choose hot to discuss the subsection’s genesis, function, and treatment by the Supreme Court.
The majority maintains that it is construing § 2255(e) according to the principle “that a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence” (op. 1139 — 40). But Webster had an opportunity at trial, and another on review under § 2255, to contend that his sentence is invalid. Multiple litigation used to be authorized, when it did nqt abuse the writ, but- with the enactment of § 2255(h) in 1996 it is no longer a “core” (or any) function of collateral review to offer extra opportunities to litigate subjects that have already been addressed.
Webster’s argument is fundamentally that the jury, the trial judge, and the Fifth Circuit got the facts wrong, and that he should be allowed an opportunity to relitigate with more evidence. “Getting the facts wrong” is not a ground of collateral relief under either § 2241 or § 2255. See, e.g., Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). And given the holding of Lindh that the Constitution does not entitle a prisoner to multiple rounds of post-conviction review, there cannot be a serious constitutional objection to § 2255(h).[4]
Webster wants us to cut § 2255(e) loose from its linguistic and historical contexts and use it to perpetuate the approach of Sanders, under which successive collateral *1154 litigation is permissible whenever it does not “abuse the writ”, even though Congress has concluded that Sanders gave insufficient weight to society’s interest in the finality of judgments. My colleagues treat the 1996 amendments as self-defeating, so that § 2241 becomes available to present new contentions (or new evidence) that cannot meet the conditions in § 2255(h) for second or successive motions under § 2255. Undoing the decisions of 1948 (to centralize post-conviction litigation in the sentencing court) and of 1996 (to limit the sort of contentions that'allow multiple rounds of collateral review), even though § 2255 as amended does not violate the Suspension Clause, is unwarranted, and it places this court in a minority of one among the circuits at the same time as we assert final say over all federal capital cases.

. Section 2255(h)(1) reads, in Ml, "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense". I do not think that "the offense” limits authorization to new evidence about guilt. It has that effect in non-capital cases, Hope v. United States, 108 F.3d 119 (7th Cir.1997), but in Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), the Supreme Court held that a person can be "innocent of the death penalty" independently of innocence of the crime. Sawyer predates the AEDPA, so it is most sensible to understand § 2255(h)(1) as authorizing a successive petition when newly discovered evidence shows, clearly and convincingly, that no rational trier of fact could have thought a given person death-eligible. The Fifth Circuit disagreed with that understanding, 605 F.3d 256, and held that Hope applies to capital litigation too. Although the majority opinion states Webster’s evidence meets the "clear and convincing” standard (op. 1144-45), which if so should have led to permission for a second collateral attack under § 2255, § 2244(b)(3)(E) forbids that kind of review by another court. (And for reasons I set out later, I do not think that Webster's evidence is "clear and convincing”.)

. Compare In re Jones, 226 F.3d 328, 333-34 (4th Cir.2000); Reyes-Requena v. United. States, 243 F.3d 89.3, 904 (5th Cir.2001); and In re Smith, 285 F.3d 6, 8 (D.C.Cir.2002) (all following Davenport); with Prost v. Anderson, 636 F.3d 578, 588 (10th Cir.2011) (disapproving Davenport).

. Brown itself acknowledged that it was going against two other circuits. 719 F.3d at 588. See also id. at 596-600 (opinion concurring in the denial of rehearing en banc). Every other circuit that has considered the issue in Brown has disapproved of this circuit’s position. See Garcia v. Warden, 2014 U.S.App. LEXIS 23114 (3d Cir. Dec. 9, 2014); Selby v. Scism, 453 Fed.Appx. 266, 268 (3d Cir.2011); Bradford v. Warden, 660 F.3d 226, 230 (5th Cir. 2011); Gilbert v. United States, 640 F.3d 1293, 1311-12 (11th Cir.2011) (en banc).

. Webster contends that § 2255 would violate the Suspension Clause if understood to block all new post-conviction evidence. That contention cannot be reconciled with Lindh, and at all events it is not what § 2255(h) does. See footnote 1, discussing § 2255(h)(1).